IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 NORTHERN DIVISION 

WILLIE B. SMITH, III, ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) CASE NO. 2:19-CV-927-ECM 
 ) [WO] 
JEFFERSON S. DUNN, et al., ) 
 ) 
 Defendants. ) 
 ) 

 MEMORANDUM OPINION AND ORDER 

 I. INTRODUCTION 

Plaintiff Willie B. Smith, III (“Smith”) is an Alabama death-row inmate in the 
custody of the Alabama Department of Corrections (“ADOC”). On November 25, 2019, 
Smith filed a Complaint pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities 
Act, asserting two causes of action against the Commissioner of ADOC and the Warden of 
Holman Correctional Facility in their official capacities. Specifically, Smith asserts that 
(1) Alabama’s three-drug lethal injection execution protocol violates his right to be free 
from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution; 
and (2) the Defendants violated his statutory rights under the Americans with Disabilities 
Act of 1990, 42 U.S.C. § 12101, et seq., (“ADA”). (Doc. 1). Smith seeks declaratory and 
injunctive relief. (Id.). On December 1, 2020, the Alabama Supreme Court set February 
11, 2021 as the date for Smith’s execution. (Doc. 17). 
Now pending before the Court is the Defendants’ motion to dismiss for failure to 
state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 
10). The motion is fully briefed and ripe for resolution. The Court heard oral argument on 

the motion on December 11, 2020. For the reasons that follow, the Defendants’ motion to 
dismiss is due to be GRANTED. 
 II. BACKGROUND 
 Lethal injection is the default method of execution in the State of Alabama. (Doc. 
1 at 5, para. 27); ALA. CODE § 15-18-82.1(a). Alabama utilizes a three-drug lethal injection 

protocol. (Doc. 1 at 3, para. 11). The protocol calls for sequential injections of midazolam, 
rocuronium bromide or vercuronium bromide, and potassium chloride in varying dosages. 
(Id. at para. 12–13). The State began using midazolam in 2014 when it substituted it for 
another drug in the three-drug protocol. (Doc. 20 at 8). 
In March 2018, the Governor signed into law Senate Bill 272, which added nitrogen 

hypoxia as an alternative method of execution in Alabama.1 (Doc. 1 at 5, para. 26); see also 
ALA. CODE § 15-18-82.1(b)(2). The statute permits a death row inmate one opportunity to 
elect execution by nitrogen hypoxia. (Doc. 1 at 5, para. 28). Otherwise, the inmate waives 
the right to elect the alternative method and will be executed by lethal injection. (Id. at 
para. 27). The bill became effective on June 1, 2018. (Id. at para. 30). 

Smith did not elect to be executed by nitrogen hypoxia within the prescribed period 
in 2018. (Id. at 6, para. 37). 

   
1 Electrocution is also an alternative method of execution in Alabama. 
Smith asserts that “Alabama’s method of execution by lethal injection violates [his] 
Eighth Amendment right to be free from cruel and unusual punishment because employing 
midazolam as the intended anesthetic creates a substantial risk of pain when compared to 

[his] alternative of nitrogen asphyxiation.” (Doc. 1 at 7). Smith further claims that he is 
intellectually disabled, rendering him “unable to personally make the election in the 
manner specified in Senate Bill 272.” (Id. at 9, para. 54). Smith asserts that “Defendants’ 
failure to provide reasonable accommodations for [him] in light of his disability violates 
his rights under the ADA.” (Id. at para. 55). 

 III. JURISDICTION AND VENUE 
The Court has original subject matter jurisdiction of this case pursuant to 28 U.S.C. 
§ 1331. In supplemental briefing, the Parties addressed the impact of Nance v. Comm’r, 
Ga. Dep’t of Corr., 2020 WL 7053495 (11th Cir. Dec. 2, 2020), on this Court’s subject 
matter jurisdiction. (Docs. 19 and 20). The Parties agree, and the Court has independently 

determined, that because Alabama has alternative methods of execution, Nance is 
inapplicable to the case at bar. (Id.). Consequently, the Court has subject matter 
jurisdiction over Smith’s claims. 
Personal jurisdiction and venue are uncontested, and the Court concludes that venue 
properly lies in the Middle District of Alabama. See 28 U.S.C. § 1391. 

 IV. STANDARD OF REVIEW 
A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the 
legal standard set forth in Rule 8: “a short and plain statement of the claim showing that 
the pleader is entitled to relief.” Fed. R. Civ. P. 8(a)(2). “To survive a motion to dismiss, 
a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to 
relief that is plausible on its face.’” Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting 
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss 

for failure to state a claim on which relief can be granted, the court must accept well-pled 
facts as true, but the court is not required to accept a plaintiff’s legal conclusions. Iqbal, 
556 U.S. at 664. 
A complaint may be dismissed if the facts as pled do not state a claim for relief that 
is plausible on its face. See id. at 679 (explaining, “only a complaint that states a plausible 

claim for relief survives a motion to dismiss”). “Determining whether a complaint states a 
plausible claim for relief [is] . . . a context-specific task that requires the reviewing court 
to draw on its judicial experience and common sense.” Id. The plausibility standard 
requires “more than a sheer possibility that a defendant has acted unlawfully.” Id. at 678. 
Factual allegations in a complaint need not be detailed but “must be enough to raise a right 

to relief above the speculative level . . . on the assumption that all the allegations in the 
complaint are true (even if doubtful in fact).” Twombly, 550 U.S. at 555 (internal citations 
omitted). Conclusory allegations that are merely “conceivable” and fail to rise “above the 
speculative level” are insufficient to meet the plausibility standard. Id. This pleading 
standard “does not require ‘detailed factual allegations,’ but it demands more than an 

unadorned, the-defendant-unlawfully-harmed-me accusation.” Iqbal, 556 U.S. at 678. 
Indeed, “[a] pleading that offers ‘labels and conclusions’ or ‘a formulaic recitation of the 
elements of a cause of action will not do.’” Id. It is the Plaintiff’s responsibility to allege 
sufficient facts to support his claims. Twombly, 550 U.S. at 555. 
 V. DISCUSSION 
The Defendants raise multiple bases for their motion to dismiss. The Court 
determines that two of the Defendants’ arguments merit discussion. First, the Defendants 

assert that the Plaintiff’s Eighth Amendment claim should be dismissed because it is 
untimely. Second, the Defendants argue that the Plaintiff’s ADA claim should be 
dismissed because the Plaintiff fails to state a claim for which relief can be granted.2 The 
Court addresses each in turn. 
A. Eighth Amendment lethal injection claim 

Smith is scheduled to be executed by lethal injection on February 11, 2021. (Doc. 
17). According to Smith, Alabama’s three-drug lethal injection protocol violates his right 
to be free from cruel and unusual punishment under the Eighth Amendment. Specifically, 
he challenges the use of midazolam in the three-drug protocol. 
The Defendants assert that Smith’s Eighth Amendment claim is barred by the statute 

of limitations.3 They argue that because Smith did not bring his challenge to the lethal 
injection protocol within two years of its having undergone a substantial change (the 
substitution of midazolam) in 2014, it is time-barred. Smith asserts that the addition of 

   
2 The Defendants argue that Smith does not have standing to bring a claim under the ADA because he does 
not seek to elect nitrogen hypoxia, “only that he wants ‘reasonable accommodations’ concerning the 
election opportunity.” (Doc. 15 at 11). According to the Defendants, “[i]f Smith would not necessarily 
elect hypoxia, given hypothetical accommodations, then he has not alleged an injury in fact.” Id. The 
Defendants, however, fail to explain how the outcome of Smith’s participation in the election process 
determines his standing to assert a claim regarding his ability to participate in it. The Court is satisfied that 
Smith has standing. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). 

3 Although the Defendants first raised the statute of limitations defense in their reply brief, (doc. 15), the 
Parties have fully briefed the limitations issue, and the Court heard oral argument on December 11, 2020. 
The Court concludes that the issue is properly before it. 
nitrogen hypoxia as an alternative method in 2018 constitutes a substantial change to 
Alabama’s execution protocol, resetting the statute of limitations. 
“[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if 

it is apparent from the face of the complaint that the claim is time-barred.” La Grasta v. 
First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation 
marks omitted). Moreover, because the Plaintiff is proceeding in forma pauperis, the Court 
shall dismiss his case “at any time if the court determines that . . . the action . . . fails to 
state a claim for which relief may be granted.” 28 U.S.C. § 1915(e)(2)(B)(ii). Therefore, 

if Smith’s Eighth Amendment claim is time-barred, the Court is required to dismiss the 
case because he has failed “to state a claim on which relief may be granted.” Id.; see also 
West v. Warden, Comm’r, Ala. DOC, 869 F.3d 1289, 1298 (11th Cir. 2017) (“A complaint 
must also be dismissed if it is time-barred under the applicable statute of limitations.”). 
To determine the statute of limitations for a claim brought pursuant to § 1983, the 

Court looks to the law of the state where the claim accrued. “All constitutional claims 
brought under § 1983 are tort actions, subject to the statute of limitations governing 
personal injury actions in the state where the § 1983 action has been brought.” McNair v. 
Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). In Alabama, the statute of limitations 
applicable to personal injury actions is two years. Id.; see also ALA. CODE § 6-2-38. 

Therefore, in order for Smith’s Eighth Amendment claim to be timely, it must have been 
brought within two years of its accrual. 
An Eighth Amendment method-of-execution claim “accrues on the later of the date 
on which state review is complete, or the date on which the capital litigant becomes subject 
to a new or substantially changed execution protocol.” West, 869 F.3d at 1298; McNair, 
515 F.3d at 1174. “However, a substantial change to a state’s lethal injection protocol 
doesn’t create an open season on all aspects of the state’s protocol.” Boyd v. Warden, 

Holman Corr. Facility, 856 F.3d 853, 873 (11th Cir. 2017). “[A] claim that accrues by 
virtue of a substantial change in a state’s execution protocol is limited to the particular part 
of the protocol that changed.” Id. at 873 (emphasis added) (quoting Gissendaner v. 
Comm’r, GA. Dep’t of Corr., 779 F.3d 1275, 1280–81 (11th Cir. 2015)). Thus, “a 
substantial change to one aspect of a state’s execution protocol does not allow a prisoner 

whose complaint would otherwise be time-barred to make a wholesale challenge to the 
State’s protocol.” Gissendaner, 779 F.3d at 1281 (internal quotations omitted). 
Even though Smith unequivocally and specifically challenges the use of midazolam 
in the three-drug lethal injection protocol, (doc. 1 at 3–4, paras. 13–25), he argues that the 
statute of limitations began to run in 2018 when Alabama authorized nitrogen hypoxia as 

an alternative method of execution. (Doc. 20 at 8). Lethal injection using a three-drug 
protocol has been the primary method of execution in Alabama since 2002. Boyd, 856 F.3d 
at 874; see also ALA. CODE § 15-18-82.1(a). Smith has been subject to the three-drug 
lethal injection protocol since then. On September 10, 2014, the ADOC substituted 
midazolam for pentobarbital as the first drug administered in the lethal injection protocol. 

Smith, therefore, became subject to execution by the three-drug protocol with midalozam 
on that date. 
Assuming that the change to midazolam constitutes “a new or substantially changed 
execution protocol[,]”4 Smith’s statute of limitations began to run, at the latest, on 
September 10, 2014 when he became subject to lethal injection using midazolam. “[A] 

federal claim accrues when the prospective plaintiff ‘knows or has reason to know of the 
injury which is the basis of the action.’” McNair, 515 F.3d at 1174 (quoting Corn v. City 
of Lauderdale Lakes, 904 F.2d 585, 588 (11th Cir. 1990)). Smith conceded at oral 
argument that he could have brought his claim as early as 2014 but did not. 
Rather, Smith argues that the addition of nitrogen hypoxia as an alternative method 

of execution in 2018 constitutes a substantial change to Alabama’s execution scheme 
sufficient to restart the statute of limitations period. According to Smith, his limitations 
period was reset because he could not have alleged nitrogen hypoxia as an alternative 
method of execution until it was adopted by the State. However, Smith offers no authority 
for the proposition that the evolution of death penalty jurisprudence on that issue 

constitutes a substantial change to the lethal injection protocol, sufficient to reset his statute 
of limitations. Ultimately, Smith challenges the State’s three drug protocol using 
midazolam, a method of execution which has not changed since 2014. 
In his Complaint, while Smith challenges the use of midazolam, he does not 
challenge nitrogen hypoxia as a method of execution. A substantial change to a method of 

execution protocol sufficient to restart the statute of limitations must be specific to the 
   
4 Although Smith is challenging the use of midazolam in the lethal injection protocol, he alleges no facts in 
his Complaint that the change to midazolam constitutes a substantial change to Alabama’s execution 
protocol. West, 869 F.3d at 1301 (“[T]he prisoner must additionally show that the substitution of one drug 
for another represents a ‘substantial change’ in protocol.”). 
particular protocol. In other words, in order for the statute of limitations to reset on method 
of execution cases challenging Alabama’s lethal injection method, Alabama must make 
significant alteration to that specific method of execution. See West, 869 F.3d at 1301; 

Boyd, 856 F.3d at 873; Gissendaner, 779 F.3d at 1280; McNair, 515 F.3d at 1174. 
The three-drug lethal injection protocol Smith now challenges was introduced in 
2014. Therefore, the statute of limitations expired in 2016. Smith filed this § 1983 action 
on November 25, 2019, long after the expiration of the two-year statute of limitations. 
Consequently, Smith’s Eighth Amendment method-of-execution claim is untimely and is 

due to be dismissed. 
B. The ADA claim 
The Defendants assert that Smith fails to state a claim for relief under Title II of the 
ADA. (Docs. 10 at 31; 15 at 6–11). The Defendants argue that Smith is not intellectually 
disabled, and thus is afforded no relief under the ADA. (Doc. 10 at 31–34) (relying on 

Smith’s Rule 32 proceedings in his petition for habeas relief pursuant to 28 U.S.C. § 2254); 
see generally Smith v. Comm’r, Ala. Dep’t of Corr., 924 F.3d 1330 (11th Cir. 2019). 
Because the matter is before the Court on a motion to dismiss, the Court does not look past 
the allegations in the Complaint. 
The determination as to whether Smith has a disability for the purposes of this 

litigation is governed by the ADA. The ADA defines disability as “a physical or mental 
impairment that substantially limits one or more major life activities . . . .” 42 U.S.C. § 
12102(1)(A). “[M]ajor life activities include, but are not limited to, caring for oneself, 
performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, 
bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, 
and working.” 42 U.S.C. § 12102(2)(A). In his Complaint, Smith asserts that he is “a 
qualified individual with a disability,” that he is “intellectually disabled,” and that his 

“intellectual disability renders him unable to personally make the election in the manner 
specified in Senate Bill 272.” (Doc. 1 at 9, paras. 53–54). Taking these allegations as true 
and noting the breadth of the ADA’s definition of “disability,” the Court concludes that 
Smith has adequately pled that he is a qualified individual with a disability. 
Smith asserts that the Defendants violated the ADA by failing to provide him a 

reasonable accommodation for his intellectual disability and that this failure to 
accommodate resulted in the denial of a public program or benefit.5 The ADA applies to 
public entities, 42 U.S.C. § 12131 et seq., and state prisons are considered public entities 
for purposes of Title II of the ADA. See Pa. Dep’t of Corr. v. Yeskey, 524 U.S. 206, 209–
10 (1998) (“State prisons fall squarely within the statutory definition of ‘public entity’. . . 

.”). To state a claim under Title II of the ADA, a plaintiff must allege: 
 (1) that he is a qualified individual with a disability; (2) that he 
 was either excluded from participation in or denied the 
 benefits of a public entity's services, programs, or activities, or 
 was otherwise discriminated against by the public entity; and 
 (3) that the exclusion, denial of benefit, or discrimination was 
 by reason of the plaintiff's disability. 

Bircoll v. Miami–Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007); see also Shotz v. 
Cates, 256 F.3d 1077, 1079 (11th Cir. 2001). 
   
5 Smith reiterated at oral argument that his ADA claim is based on a failure to accommodate. 
To the extent Smith attempts to plead that he “was excluded from participation in 
or denied the benefits of a public entity's services, programs, or activities, or was otherwise 
discriminated against by the public entity,” he fails to allege sufficient facts to support this 

allegation. Smith does not allege with any specificity from which service, program, or 
activity he was excluded or in which program he was denied participation. Without 
sufficient factual allegations, the Court is left to speculate from which service, program, or 
activity Smith contends he was excluded. Compare (Doc. 1 at 9), with Yeskey, 524 U.S. at 
210 (holding that a prison boot camp program qualified as a service, program, or activity 

for the purposes of Title II of the ADA); Nat’l Ass’n of the Deaf v. Florida, 980 F.3d 763, 
773 (11th Cir. Nov. 10, 2020) (referring to livestreaming videos provided by the Florida 
Senate and House as “services” pursuant to Title II of the ADA); Thompson v. Davis, 295 
F.3d 890, 899 (9th Cir. 2002) (holding that parole proceedings constitute an “activity” 
within the meaning of Title II of the ADA); but see, e.g., Bircoll, 480 F.3d at 1083 

(reserving ruling on whether police conduct during an arrest is a service, activity, or 
program under Title II of the ADA); Filush v. Town of Weston, 266 F.Supp.2d 322 (D. 
Conn. 2003) (finding that personnel and equipment providing public education, 
transportation, or law enforcement are not services within Title II of the ADA). 
The Complaint also lacks sufficient factual allegations that the Defendants denied 

Smith the opportunity to participate in or benefit from a service, program, or activity 
because of his intellectual disability. Moreover, Smith does not allege facts that could 
establish that he was discriminated against by the Defendants. Instead, Smith simply 
asserts a failure to accommodate claim. 
Ultimately, Smith’s ADA claim fails for a more fundamental reason: he fails to 
plead any facts that would demonstrate that he requested an accommodation for his 
intellectual disability.6 In his Complaint, Smith asserts that “Defendants’ failure to provide 

reasonable accommodations for [him] in light of his disability violates his rights under the 
ADA.” (Doc. 1 at 9, para. 55). However, “the duty to provide a reasonable accommodation 
is not triggered unless a specific demand for an accommodation has been made….” Gaston 
v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999); see also 
Malone v. Butler, 2012 WL 4009341 (N.D. Ala. Sept. 7, 2012) (adopting Report and 

Recommendation without objection, Malone v. Butler, 2012 WL 4009345 (N.D. Ala. Aug. 
20, 2012)) (applying this principle in a prison context). “Only after the plaintiff makes a 
demand for accommodation and the defendant fails to provide the accommodation can the 
plaintiff prevail on his claim that the defendant discriminated against him by failing to 
provide a reasonable accommodation.” Malone, 2012 WL 4009345, at *3. Thus, because 

Smith proceeds under the theory that the Defendants failed to provide reasonable 
accommodations for his intellectual disability, he must allege that he requested a 
reasonable accommodation. Smith makes no such allegation. The absence of any 
allegation that Smith requested a reasonable accommodation, and that these Defendants 
failed to provide it, is fatal to his ADA claim. Gaston, 167 F.3d at 1364. Accordingly, the 

Court concludes that Smith has failed to state a claim for relief under the ADA for which 
relief can be granted. 
   
6 While Smith argues that Senate Bill 272 did not provide for any accommodations for individuals with 
disabilities, he fails to allege that any such claim could properly be brought against these Defendants. 
 VI. CONCLUSION 
For the reasons as stated, it is 
ORDERED that Defendants’ Motion to Dismiss pursuant to Federal Rule of Civil 

Procedure 12(b)(6), (doc. 10), is GRANTED, and this case is DISMISSED without 
prejudice. 
A separate final judgment will be entered. 
DONE this the 14th day of December, 2020. 

 /s/ Emily C. Marks 
 EMILY C. MARKS 
 CHIEF UNITED STATES DISTRICT JUDGE